# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **STEVE R. BLACKWELL,** ) | |
| ) | |
| Plaintiff, ) | Case No. 1:11CV00032 |
| ) | |
| v. ) | **OPINION** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | By: James P. Jones |
| **COMMISSIONER OF** ) | United States District Judge |
| **SOCIAL SECURITY,** ) | |
| ) | |
| Defendant. ) | |

*Joseph E. Wolfe, Wolfe, Williams, Rutherford & Reynolds, Norton, Virginia, for Plaintiff. Nora Koch, Acting Regional Chief Counsel, Region III, Jordana Cooper, Assistant Regional Counsel, and Stephen M. Ball, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

Plaintiff Steve R. Blackwell filed this action challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying his claim for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act ("Act"), 42 U.S.C.A. §§ 401-433 (West 2011). Jurisdiction of this court exists pursuant to 42 U.S.C.A. § 405(g).

Blackwell filed for benefits on May 16, 2007, alleging that he became disabled on December 31, 2003. His claim was denied initially and upon reconsideration. Blackwell received a hearing before an administrative law judge ("ALJ"), during which Blackwell, represented by counsel, and a vocational expert testified. The ALJ denied Blackwell's claim, and the Social Security Administration Appeals Council denied his Request for Reconsideration. Blackwell then filed his Complaint with this court, objecting to the Commissioner's final decision.

The parties have filed cross motions for summary judgment, which have been briefed. The case is ripe for decision.

II

Blackwell was born on April 20, 1954, making him an individual closely approaching advanced age under the regulations. 20 C.F.R. § 404.1563(d) (2011). Blackwell has a high school education[1] and has worked in the past as a coal miner, a typewriter repairman, and an insurance salesman. He originally claimed he was disabled due to chronic obstructive pulmonary disease, chronic bronchitis, black lung, hip pain, knee pain, neck pain, and possible arthritis.

---

[1] Blackwell also has special training in machine metals and insurance sales.

Blackwell sought treatment with Darrick Leacock, M.D., at Tug River Health Association from November 2001 through November 2004. During this time period, Blackwell complained of shortness of breath, wheezing, and a chronic cough. He reported that he had smoked for twenty-eight years, smoking three to four packs per day. (R. at 231.) Chest X rays in November 2001 showed a minimal degree of nodular fibrosis consistent with occupational pneumoconiosis. Dr. Leacock diagnosed Blackwell with coal workers' pneumoconiosis and chronic obstructive pulmonary disease.

In July 2002, after Blackwell's mine closed and he was laid off, the West Virginia Occupational Pneumoconiosis Board found that Blackwell had no more than five percent pulmonary functional impairment attributable to occupational pneumoconiosis. (R. at 228.)

In March 2004, chest X rays showed changes in his pneumoconiosis, and pulmonary function testing revealed "possible early obstructive pulmonary impairment." (R. at 227.)

D. L. Rasmussen, M.D., examined Blackwell in February 2007. Blackwell's breath sounds were normal, but there was a mild expiratory wheeze in the pharyngeal region with forced expirations. Arterial blood gas studies showed a marked impairment in oxygen transfer during exercise, and pulmonary diffusing capacity findings revealed "slight" restrictive ventilatory impairment with only

"minimally reduced" single breath carbon monoxide diffusing capacity. (R. at 250, 259.)  Dr. Rasmussen reported moderate loss of lung function and diagnosed Blackwell with coal workers' pneumoconiosis and chronic bronchitis.  Dr. Rasmussen indicated that Blackwell's lung problems were caused by both cigarette smoke and coal mine dust exposure. (R. at 239.)  He opined that Blackwell was unable to perform his regular coal mine job.

In July 2007, Gary Craft, M.D., performed a consultative examination at the request of the state agency.  Blackwell complained of recurrent pain in his neck, left shoulder, right hip, and both knees, as well as untreated anxiety.  He indicated that he could climb two flights of stairs or walk two city blocks at a normal pace without rest.  (R. at 308.)  Dr. Craft noted that Blackwell was not taking any medication at the time of the examination.  (R. at 309.)  He reported that Blackwell had normal station and gait, excellent motor power over all four extremities, and no joint abnormalities or neurological deficits.  (R. at 311.)  Dr. Craft opined that Blackwell was free of any manipulative, workplace, or environmental limitations, and would have only minimal postural limitations.

Robert McGuffin, M.D., a state agency physician, reviewed Blackwell's medical records in July 2007.  He opined that Blackwell was capable of performing a range of light work.

In July 2007, E. Hugh Tenison, Ph.D., a state agency psychologist, reviewed Blackwell's medical records and determined that he had anxiety, but that his mental impairment was not severe.  Dr. Tenison noted that Blackwell had no history of mental health treatment and had never taken medication for mental problems.  (R. at 339.)  In January 2008, Joseph I. Leizer, Ph.D., a state agency psychologist, also independently reviewed the medical records and agreed with Dr. Tenison's assessment.

Blackwell underwent a physical residual capacity assessment in January 2008.  Michael Hartman, M.D., indicated that Blackwell could occasionally lift or carry twenty pounds, sit or stand about six hours in an eight-hour workday, and had unlimited pushing and pulling abilities.  Dr. Hartman opined that Blackwell could never climb ramps, stairs, ladders, ropes, or scaffolds, and should avoid concentrated exposure to fumes, odors, dusts, and gases.  He also noted that Blackwell should avoid all exposure to hazards such as machinery and heights.

In February 2009, Blackwell sought treatment at Tug River Health Association for complaints of breathing problems and joint pain.  Dr. Leacock diagnosed Blackwell with chronic airway obstruction and coal workers' pneumoconiosis.  He prescribed Advair and Albuterol.

At the administrative hearing held in April 2009, Blackwell testified on his own behalf.  Blackwell confirmed that he had never been prescribed oxygen for his

breathing problems. Bonnie Martindale, a vocational expert, also testified. She classified Blackwell's past work as a coal miner as medium, unskilled; his past work as a typewriter repairman as medium, skilled; and his past work as an insurance salesman as light, skilled.

After reviewing all of Blackwell's records and taking into consideration the testimony at the hearing, the ALJ determined that he had severe impairments of chronic obstructive pulmonary disease, pneumoconiosis, and osteoarthritis, but that none of these conditions, either alone or in combination, met or medically equaled a listed impairment.

Taking into account Blackwell's limitations, the ALJ determined that Blackwell retained the residual functional capacity to perform a range of light work that involved only occasionally using ramps, climbing stairs, balancing, kneeling, crouching, or stooping.  The ALJ stated that Blackwell could not crawl or climb ladders, ropes, or scaffolds, and that he was to avoid concentrated exposure to dust, fumes, odors, chemicals, or gases.  The vocational expert testified that someone with Blackwell's residual functional capacity could work as an order filler, a router, or an information clerk.  The vocational expert testified that those positions existed in significant numbers in the national economy.  Relying on this testimony, the ALJ concluded that Blackwell was able to perform work that existed

in significant numbers in the national economy and was therefore not disabled under the Act.

Blackwell argues the ALJ's decision is not supported by substantial evidence because the ALJ improperly determined Blackwell's residual functional capacity by failing to properly interpret the medical opinions of Dr. Rasmussen and Dr. Craft. For the reasons below, I disagree.

### III

The plaintiff bears the burden of proving that he is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d)(2)(A).

In assessing DIB claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, whether he could perform other

work present in the national economy.  *See* 20 C.F.R. § 404.1520(a)(4) (2011).  If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases.  *Id*.; *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983).  The fourth and fifth steps of the inquiry require an assessment of the claimant's residual functional capacity, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy.  *Id*. at 869.

In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through application of the correct legal standard.  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).  Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance."  *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).  It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence.  *Seacrist v. Weinberger*, 538 F.2d 1054, 1956-57 (4th Cir. 1976).  It is not the role of this court to substitute its judgment for that of the Commissioner.  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Blackwell argues that the ALJ's decision is not supported by substantial evidence. He presents two arguments.

First, Blackwell argues that the ALJ failed to properly interpret the opinion of Dr. Rasmussen. I find this argument unpersuasive. Dr. Rasmussen opined that Blackwell was unable to perform his regular coal mine job. (R. at 254.) The ALJ explicitly agreed with this finding, but went on to determine that Blackwell was capable of performing a range of other, light work. (R. at 21-23.) Blackwell argues that Dr. Rasmussen's report was only consistent with an ability to perform sedentary work; however, there is nothing in the record to support this claim. Dr. Rasmussen's report described normal breath sounds, "slight" restrictive ventilatory impairment with "minimally reduced" single breath carbon monoxide diffusing capacity, and only moderate loss of lung function during exercise. (R. at 250, 254, 259.) Thus, there is no evidentiary basis for claiming that the ALJ was bound to interpret these findings as indicative of an ability to perform only sedentary work. Moreover, Dr. Craft, Dr. McGuffin, and Dr. Hartman all agreed that Blackwell's lung capacity was consistent with the ability to perform light work.

Second, Blackwell argues that the ALJ misconstrued the findings of the consultative examiner, Dr. Craft. Blackwell claims that Dr. Craft's report confined him to light work with "frequent breaks." This argument has no merit. Dr. Craft associated "frequent breaks" with only one specific feature of his opinion —

Blackwell's ability to occasionally lift and carry twenty-five pounds.  (R. at 311.)  However, Dr. Craft also opined that Blackwell could frequently pick up and carry fifteen pounds without frequent breaks.  (R. at 311.)  This is consistent with a finding of light work, which is defined to require lifting a maximum of only twenty pounds at a time and frequent lifting of only ten pounds.  *See* 20 C.F.R. § 404.1567(b) (2011).  Dr. Craft also opined that Blackwell would have only minimal postural limitations, and that he was free of any manipulative, workplace, or environmental limitations.  Accordingly, I find that substantial evidence supports the ALJ's interpretation of Dr. Craft's report.

IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted.  A final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED:  March 29, 2012

/s/  James P. Jones
United States District Judge